# Richmond.

## MARTIN v. CITY OF RICHMOND.

November 19, 1908.

1. JUSTICES OF PEACE—*Police Justice—Jurisdiction—Title to Real Estate —Case at Bar.*—A justice of the peace, or police justice, can only exercise such jurisdiction as is expressly conferred on him, and although jurisdiction be conferred to impose penalties for violations of a statute or city ordinance, yet this jurisdiction is ousted as soon as it is made to appear that the right to impose the penalty involves the validity of a *bona fide* claim of title to real estate. In the absence of statute, the justice cannot inquire into the claim, nor proceed to a summary conviction; and this is true even though the defendant is given a right of appeal to a court of record where he can have a jury trial. Statutes conferring jurisdiction on justices will not be aided or extended by inference or implication beyond their express terms. In the case at bar, the police justice of the city of Richmond was given jurisdiction, by an ordinance of the city, over any person who should break or dig up any street, side- walk or alley of the city. The defense was that the *locus in quo* was not a street, sidewalk or alley of the city, but the fee-simple property of the defendant, and it is held that the jurisdiction of the police justice was ousted by the *bona fide* claim of title by the defendant.

2. PROHIBITION—*Justice of Peace—Police Justice.*—Prohibition is the ap- propriate remedy to prevent a justice of the peace, or police justice from exceeding his jurisdiction.

Error to a judgment of the Chancery Court of the city of Richmond. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*R. H. Talley,* for the plaintiff in error.

*Henry R. Pollard,* for defendant in error.

Cardwell, J., delivered the opinion of the court.

J. Henry Martin was summoned to appear before the police justice of the city of Richmond, on the 18th day of May, 1907, to show cause, if any he could, why a fine of twenty dollars should not be imposed on him for violation of an ordinance of the city by "digging up the street near Main and Elm streets" without a permit.

The section of the city's ordinance alleged to have been violated is as follows:

"18. No person shall break or dig up, or assist in breaking or digging up, any part of any street, sidewalk, or alley, or remove any gravel, dirt or manure therefrom, without having first obtained the written permission of the committee on streets or the engineer of the city. * * *

"Any person failing to comply with this section shall be reported to the police justice by the city engineer and officers of the police force, and shall be liable to a penalty of not less than ten nor more than one hundred dollars," etc.

On the return day of the summons, Martin appeared and moved the court to dismiss the summons on the ground that the location at which, as alleged, he had dug up a street was not "a street, sidewalk or alley," but was owned by him in fee-simple and was in his occupancy, under and by virtue of a deed of conveyance to him which included the location in question, and which deed having been duly recorded he then and there exhibited to the court; that he claimed to own the land upon which he had dug and removed gravel by *bona fide* title under and by virtue of his said deed; and that the city of Richmond had no manner of title to or interest in the same.

The city denied the right of Martin to the property, and asserted its right thereto. Thereupon, Martin again moved to be discharged and the summons against him dismissed, because

the title to the property having been drawn in question, the police court was without jurisdiction to try and determine the controversy; in other words, that the police justice was without jurisdiction to try and determine a controversy involving the title to real estate, such as had thus arisen.

The police justice refused to dismiss the summons against Martin and discharge him from custody; whereupon, Martin preferred a petition to the Chancery Court of the city of Richmond, praying a writ of prohibition to prevent the police justice from taking further cognizänce of the prosecution against him.

The city answered the petition, admitting, among other things, that petitioner's claim to the property involved was made in good faith, but denied that the making of such claim and the raising of the question of title to the property operated to oust the police justice of jurisdiction over the prosecution asked to be prohibited; claiming title to the property in dispute as a highway, both by conveyance and dedication, and relied upon certain sections of the charter and ordinances of the city, and of the Constitution of the State for the proposition that as the provisions of the charter, enacted in pursuance of authority of the Constitution, reserved to every one prosecuted for a violation of the ordinances of the city an appeal from any fine or imprisonment imposed upon him, the jurisdiction of the police justice to try and determine this controversy is not ousted by the fact that the title to real estate, though *bona fide* made, is drawn in question.

The answer of the city was adopted by the police justice as his own, and Martin demurred to said answers, which demurrer was overruled; the chancery court being of opinion that the police justice had jurisdiction, notwithstanding the fact that the title to real estate was directly and necessarily involved, denied the writ of prohibition prayed for.

The writ of error awarded by this court to the judgment of the court below presents for consideration the single question,

whether or not the jurisdiction of the police justice to try and determine the prosecution against plaintiff in error was ousted by his having in good faith made claim to the property in dispute.

We do not deem it necessary to review the ordinances cited and relied on by the learned attorney for the city. It may be conceded that they are constitutional and valid, but not one of them confers in terms any authority upon the police justice, or any other justice of the peace of the city, authority to try and determine a case such as the one under consideration; nor is there to be found in the Constitution or the statutes of the State, or the charter of the city, any such express authority to a justice of the peace or a police justice.

As said by this court in *James* v. *Stokes*, 77 Va. 225, the jurisdiction of a justice "is given by law alone, and is, in every case, what the law fixes it at  *  *  * . In the history of the State, the efforts of the justice to extend his jurisdiction beyond the limits prescribed by law have been checked by the mandate of the higher courts in the form of the writ of prohibition."

Twenty-four Cyc., at p. 440, states the civil jurisdiction of the justices of the peace to be of purely statutory origin, and that the statutes conferring jurisdiction will not be aided or extended by inference or implication beyond their express terms.

The same authority, at pp. 450, 451, and also 18 Amer. & Eng. Enc. L., p. 24, may be cited for the proposition that justices of the peace have no jurisdiction of actions in which the title to real property is involved. In support of that broad statement of the law, a large number of decided cases are cited, among which is *Warwick & Barksdale* v. *Mayo*, 15 Gratt. 528.

In *Warwick & Barksdale* v. *Mayo*, the precise question was involved that we are here considering, and it was the unanimous judgment of the court, that in such a case, if the claim to the property in dispute is *bona fide* made by the defendant, "the jurisdiction of the mayor or justice is ousted. He cannot inquire into the validity of the claim, and he has no power in

such case to proceed to summary conviction. This principle applies as well to the case where an incorporeal hereditament or real franchise is claimed or resisted, as to a controversy touching the freehold itself."

The opinion in that case, in which all the judges sitting concurred, was by that learned jurist and president of the court, Judge Allen, and we quote the following from the opinion as conclusive of the question there involved:

"In Virginia, it is not pretended that justices of the peace or officers of corporations have ever been empowered by any statute to try, without writ, titles to land in civil causes. The eleventh article of the bill of rights declares that in controversies respecting property, and in suits between man and man, the ancient trial by jury of twelve men is preferable to any other, and ought to be held sacred.

"Though this provision may not amount to a positive restriction upon the power of the legislature in reference to all controversies respecting property of every kind, and suits between man and man, no matter what may be the amount in dispute, it is nevertheless the provision which should always be kept in mind in construing the acts of the legislature; and we are not warranted in giving such an interpretation to their acts as to impute to the legislature the intention of setting aside this article by mere implication. In civil cases we see no such jurisdiction is conferred, and it would be a strained construction which would impute to the legislature the intention to confer such jurisdiction where officers were invested with power to impose fines, and the question arose collaterally. We have for instance a provision in the Code, copied from former laws, p. 450, ch. 101, sec. 2, subjecting a person to a fine of three dollars for each offense of shooting, hunting, &c., within the enclosed bounds of another person, without license from the owner. It would be a forced construction which would authorize the justice, upon complaint for violating this law, to adjudicate upon the question of title. The contrary was held by all the

judges in the *Queen* v. *Cridland, &c.*, 90 Eng. C. L. R. 853, a proceeding under a statute imposing a fine for committing a trespass by entering on land in search or pursuit of game; all concurring that where there was a *bona fide* claim of title set up, the justices have no longer jurisdiction to proceed to a summary conviction. The regard which the legislature has always had for this right to a freehold is further manifested by provisions contained in the laws regulating appellate jurisdiction, conferring as a general rule such appellate jurisdiction where the title or bounds of land shall be drawn in question. The principle is recognized also in the 11th section, article 6, of the present Constitution, declaring in what cases appellate jurisdiction may be conferred on this court, and providing that it shall not have jurisdiction in civil causes, where the matter in controversy, exclusive of costs, is less in value or amount than five hundred dollars, except in controversies concerning the title or boundaries of land, &c.

"The question has never been presented for adjudication in any case in Virginia, where the justice was exercising the jurisdiction conferred to proceed to a summary conviction. But that a justice of the peace had no jurisdiction to try titles to freehold or any fee-simple estate or interest in an incorporeal hereditament, was expressly determined in *Miller* v. *Marshall*, 1 Va. Cas. 158, where a prohibition was awarded to the justice who was proceeding to try a cause before him for the recovery of a rent reserved by deed to one and his heirs forever. On this branch of the case I conclude, that, whether upon a trial of a civil cause, or in the exercise of the general power conferred by statute to proceed to a summary conviction, the justice, mayor, or any such subordinate officer is bound to dismiss his summons immediately on being convinced that the case involves a *bona fide* claim of title to real estate, unless the jurisdiction is expressly conferred by statute."

It will be observed that *Miller* v. *Marshall*, 1 Va. Cas. 158 is cited with approval by Allen P., where it was expressly de

termined that a justice of the peace had no jurisdiction to try title to a freehold, or any fee-simple estate or interest in an incorporeal hereditament, and that decision has remained unchallenged for a century. Nor has the decision in *Warwick & Barksdale* v. *Mayo, supra,* rendered nearly a half century ago, ever been called in question, so far as we are advised.

In the case at bar, while it is admitted in the argument for the city that there was no express authority for the assumption of jurisdiction by a justice to try title to land, and that the statutory law in this respect is just as it existed when *Warwick & Barksdale* v. *Mayo, supra,* was decided, the contention is made that that case is not in point, inasmuch as the absolute right of appeal is now secured to any person convicted of violating the ordinances of the city of Richmond, but when *Warwick & Barksdale* v. *Mayo* was decided there was no such right of appeal. It is further contended that the case of *Brown* v. *Epps,* 91 Va. 728, 21 S. E. 119, 27 L. R. A. 676, in effect overruled the decision in *Warwick & Barksdale* v. *Mayo.*

With respect to the first of these contentions, while the opinion of the court in *Warwick & Barksdale* v. *Mayo* did mention (but only incidentally as appears to us) the fact that no appeal was allowed by the ordinance under which the mayor was proceeding, stronger language could not have been employed than was employed to point out that, in the absence of a statute expressly conferring such jurisdiction, a justice of the peace, or a mayor having only the power and authority of a justice, is bound to dismiss a case that involves a *bona fide* claim of title to real estate. The opinion states in so many words, that no jurisdiction had been conferred by statute upon justices of the peace to try such cases as the one under consideration, and it would be a strained and unreasonable construction of the opinion to hold, that the decision was based upon the lack of the right to an appeal reserved to the defendant. The plain interpretation of the opinion is that a justice can only take such jurisdiction as is expressly conferred on him, and it could

not have been meant that the right of appeal would take the place of affirmative legislation conferring jurisdiction to try a case in which the title to real estate was drawn in question.

With respect to the contention that the case of *Brown* v. *Epps, supra,* in effect overruled the case of *Warwick & Barksdale* v. *Mayo,* it is to be noted that in the last of these cases decided, the police justice did not, as he did in the first, assume or usurp jurisdiction, but jurisdiction was expressly conferred upon him by statute to try and determine the case of the defendant, Brown, before him, and the constitutionality of that statute was the question at issue. Not a word of reference to the case of *Warwick & Barksdale* v. *Mayo,* is employed in the opinion by Keith, P., and no expressions are used which could be fairly interpreted as impairing the controlling influence of the decision in *Warwick & Barksdale* v. *Mayo.* In this case there is no statute, ordinance, or other authority of law authorizing, empowering, or justifying the police justice to try and determine the controversy, involving, as it necessarily does, the title to real estate.

The courts of other States, with practical unanimity, lay down the principle enunciated in our own decisions, *supra,* that a justice of the peace cannot try and determine causes which, though otherwise within his jurisdiction, involve the title to real estate.

In addition to the authorities already referred to, see the following: *Campbell* v. *Potts,* 119 N. C. 530, 26 S. E. 50; *Alleman* v. *Dey,* 49 Barb. (N. Y.) 641; *Bloom* v. *Stenner,* 50 N. J. Law 59, 11 Atl. 31; *Hughes* v. *Mount,* 23 W. Va. 130; *Watson* v. *Watson,* 45 W. Va. 290, 31 S. E. 939.

While the right of appeal may be clearly reserved to plaintiff in error from a judgment in this prosecution convicting him before the police justice of a misdemeanor, it is worthy of note that the appeal is to the hustings court of the city, a court without jurisdiction to try and determine controversies involving the title to real estate.

The case at bar is not in any material feature differentiated from the case of *Warwick & Barksdale* v. *Mayo, supra,* and therefore we are of opinion that the Chancery Court of the city of Richmond erred in not awarding the writ of prohibition, as prayed by plaintiff in error, and its judgment will be reversed; and this court will enter the order that should have been entered by the chancery court, awarding the writ.

BUCHANAN, J., dissenting:

I cannot concur in the opinion of the court in this case. In my judgment, the case of *Warwick & Barksdale* v. *Mayo,* 15 Gratt. 528, does not control it. The principle involved in that case is stated by Judge Allen in the opinion of the court, p. 537, to be, "whether the title to lands may in this collateral way be subjected to the jurisdiction of police officers, proceeding without writ, deciding without the intervention of a jury, who holds no court of record and therefore no record of their proceedings is preserved, and from whose judgment there is no appeal. The recognition of such a jurisdiction might in effect submit the whole beneficial interest in the freehold to the absolute control of such inferior tribunal; for by successive fines the right of the owner might be so impaired as to be of little value."

Upholding the jurisdiction of the mayor in that case would have deprived the claimant of the land of the right of trial by jury, and might in effect, as stated by Judge Allen, have submitted his whole beneficial interest in the freehold to the absolute control of the mayor.

In this case, upholding the jurisdiction of the police justice can have no such effect. The claimant of the land has the absolute right of appeal to a court of record, where he has the right of trial by jury; so that none of the objections made to upholding the jurisdiction of the mayor applies to this case, except the fact that the proceeding is "without writ" in the strict sense of that term, but upon notice to show cause why he should not be

fined for violating the ordinance. This objection can have no weight in the decision of this case, if the other objections do not exist. There is no question that the city had the right to pass an ordinance prohibiting any person from digging up its streets, and to impose a penalty for its violation. Neither can there be any question that the legislature had the power to confer jurisdiction upon the police justice and all other justices to try any person charged with any offense not punishable with death or confinement in the penitentiary, provided the right of appeal was secured to the accused. Art. II, sec. 8, of the Constitution.

Neither, in my judgment, is there any doubt that it has conferred upon the police justice the right to try persons for violating the ordinances of the city, although there may be involved incidentally the right to the freehold of land.

By section 105 of the city charter it is provided, "that the jurisdiction of the court (justice) shall extend to all cases arising within the jurisdictional limits of the city, of which a justice of the peace may take cognizance under the laws of the State, and to all cases arising under the charter or ordinances of the city."

There is no exception made in the section, limiting the police justice's jurisdiction to cases not involving the title to freehold in lands. His jurisdiction is expressly declared to "extend to *all cases*" of the character mentioned.

As was said by Judge Moncure in *Moore* v. *Va. &c. Ins. Co.,* 28 Gratt. 508, 516-517, 26 Am. Rep. 373, a more comprehensive word than 'all' cannot be found in the English language." And unless, as was said in that case, very strong reasons can be furnished for giving it a restricted construction, it should receive its comprehensive meaning.

No such reason, as we have seen, exists in this case; for the accused in a case like this, when tried by a police justice, is protected in every right secured to him by the Constitution, as fully and as effectually as was the accused in the case of *Brown*

v. *Eppes,* 91 Va. 726, 21 S. E. 119, 27 L. R. A. 676, and there is no reason, in my judgment, why the jurisdiction of the police justice in this case should not be sustained, as was that of the justice of the peace in that case, unless the right to land is of more value and is to be placed upon higher grounds than the right to personal liberty; and this, of course, cannot be so.

By section 4106 of the Code it is provided, that justices of the peace in the counties shall have exclusive original jurisdiction of all misdemeanors, except violations of the revenue and election laws of the State—of offenses against public policy, violation of Sunday laws by railroads and steamship companies, and the sale of intoxicating liquor on Sunday. Sec. 4106, Va. Code, 1904.

If police justices have no jurisdiction of any case where the freehold to land may be involved, then justices of the peace have no such jurisdiction of such cases, for the statute which confers jurisdiction upon them is no more comprehensive than the ordinance which confers jurisdiction upon the police justices. If it be true that justices of the peace have no such power, then in the counties of the State there is no means of punishing the violations of many laws.

By section 3856-a of the Code it is provided, that "Any person other than a duly authorized officer changing the line of any public road on either side thereof, as the lines have existed for twenty years or more, without the permission entered of record of the circuit court of the county in which the road lies, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than five nor more than fifty dollars."

By section 2071 of the Code, shooting, hunting, ranging, fishing, trapping or fowling upon the lands of another without his consent is prohibited under a penalty of not less than five nor more than fifty dollars for each offense.

In prosecutions under either of these sections, the question of the title to the freehold may often be incidentally involved;

yet if justices of the peace have no jurisdiction where the accused *bona .fide* claims the land upon which the unlawful act is charged to have been committed, there is no tribunal provided in which he can be prosecuted criminally for the violation of those sections. The circuit courts clearly have no original jurisdiction over such cases. Va. Code, 1904, sec. 4106. Their jurisdiction over them is only by way of appeal. .

A construction which requires the word "all" to receive a narrow instead of its usual comprehensive meaning, and which places the law-making power in the position of enacting laws to punish offenses and yet furnishing no tribunal in which to try those who are charged with their violation, ought not, in my opinion, to be given any provision of law, unless there be some very strong reason for it. No such reason, in fact no reason at all, so far as I can see, exists in this case for such a construction; but, on the contrary, the language of the statute, and the manifest policy of the legislature not to burden the courts of record in the first instance with the trial of minor criminal offenses, seem to me to show that the construction placed upon the provisions of law involved in this case by the learned chancery court, in refusing the writ of prohibition, was correct, and that its judgment should be affirmed.

*Reversed.*