## . Richmond

### CITY OF RICHMOND & ANOTHER V. SUTHERLAND.

#### March 13, 1913.

1. STATUTES—*Construction—Legitimate Intent—How Ascertained.*—In construing a statute it is of paramount importance to ascertain the intention of the legislature. That intention may be discovered from different signs. As a primary rule, it is to be collected from the words. When the words are not explicit, it may be gathered from the occasion and necessity for the statute from a comparison of its several parts and of other acts *in pari materia,* and sometimes from extraneous circumstances which may throw light upon the subject.

2. STATUTES—*Amendment — New Provision—Construction—Changes.*— When the legislature amends a statute by adding to it a new provision, it must be presumed that the legislature acted with full knowledge of and in reference to the existing law upon the same subject, and the construction placed upon it by the courts, and intended by the added provision to make some change in the existing law.

3. STATUTES—*Amendment—Construction—Effect Given to Whole.*—In construing an amendment of a statute, courts must gather the legislative intent not from a part, but from all the words used, and are only justified in rejecting any part when it has been found impossible to give effect to all the language used and reach a rational conclusion.

4. POLICE JUSTICES—*Jurisdiction—Code, Section 4106 as Amended— Violation of City Ordinances—Claim of Title to Land.*—Applying the foregoing rules of construction to the amendment made by the Acts of 1910 to section 4106 of the Code, whereby police justices are given "exclusive original jurisdiction for the trial of all offenses of *whatever nature* against the ordinances of the respective cities for which they shall be appointed," police justices have jurisdiction of violations of city ordinances, although they involve the validity of a *bona fide* claim of title to real estate—a jurisdiction not previously possessed by them or by any court of record. The word "whatever" is comprehensive and was intended to embrace such offenses.

5. POLICE JUSTICES—*Jurisdiction—General Language of Statute.*—A justice of the peace (and a police justice), who is acting under a statute, can only exercise such jurisdiction as is expressly conferred on him. But jurisdiction of offenses is "expressly conferred" by the use of general language so comprehensive and clear as to manifestly show that it was the intention of the legislature to confer jurisdiction over all such offenses, regardless of their nature or character. It is not necessary to set out at length every such offense, or every class of such offenses.

Error to a judgment of the Chancery Court of the city of Richmond awarding a writ of prohibition.

*Reversed.*

The opinion states the case.

*Henry R. Pollard,* for the plaintiffs in error.

*Wallace F. Brown,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The question involved in this case is whether or not a police justice of the city of Richmond has jurisdiction of a prosecution instituted by that city against the defendant in error for an alleged violation of an ordinance of the city, prohibiting encroachments upon its streets and alleys, when it is made to appear that the right to impose the penalty provided by the ordinance involves the validity of a *bona fide* claim of title to real estate.

That the police justice did not have such jurisdiction under the charter of the city, or under the general laws as they existed in May, 1907, was determined in *Martin* v. *City of Richmond,* 108 Va. 765, 62 S. E. 800. There has been no change in the charter affecting the question involved since that decision was made, but by an act of Assembly approved March 16, 1910 (Acts 1910, ch. 284, p. 424),

44

section 4106 of the Code was amended.   That amendment, it is claimed by the city, was intended to confer, and does confer, the jurisdiction in question upon the police justice of the city.

When the case of *Martin* v. *City of Richmond* arose, the general law fixing the jurisdiction of police justices was contained in sections 1016-b and 4106 of Virginia Code 1904.   By section 1016-b it was provided, among other things, that the police justice of a city should, within the corporate limits of their respective cities and within one mile beyond, "have exclusive original jurisdiction for the trial of all offenses against the ordinances of their respective cities."

Section 4106 contained, among others, the following provision, except the words in italics, which constitute the amendment to, or change made in, the section by the act of March 16, 1910:

"Sec. 4106.   What criminal offenses police justices and justices of the peace may try.—The several police justices and justices of the peace, in addition to the jurisdiction exercised by them as conservators of the peace, shall have concurrent jurisdiction with the circuit courts of the counties and the corporation or hustings courts of the corporations of the State in all cases of violation of the revenue and election laws of the State, and of offenses arising under the provisions of chapter one hundred and eighty-seven of sections thirty-eight hundred and one, thirty-eight hundred and two, thirty-eight hundred and three, and thirty-eight hundred and four of the Code of Virginia; and except when it is otherwise specially provided, shall have exclusive original jurisdiction for the trial of all other misdemeanor cases occurring within their jurisdiction in their respective magisterial districts, in all of which cases the punishment may be the same as the circuit courts of the counties and the corporation or hus-

tings courts of the corporations are authorized to impose, *and shall have exclusive original jurisdiction for the trial of all offenses of whatever nature against the ordinances of the respective cities for which they shall be appointed, except in those cities whose charter confers upon the mayor the authority to try such offenses.*"

The only question, therefore, we have to consider and determine is whether or not section 4106 of the Code, as amended by the act of March 16, 1910, confers upon the police justice of the city the jurisdiction in question.

In construing a statute the paramount inquiry is, what was the intention of the legislature? That intention may be discovered from different signs. As a primary rule it is to be collected from the words. When the words are not explicit it may be gathered from the occasion and necessity of the statute being passed; from a comparison of its several parts and of other acts *in pari materia;* and sometimes from extraneous circumstances which may throw light on the subject. *Fox's Admr.* v. *Com'th,* 16 Gratt. (57 Va.) 1, 10; *Chaflin, &c.* v. *Steinbeck & Co.,* 18 Gratt. (59 Va.) at pp. 860-861; *Vicars* v. *Sayler,* 111 Va. 307, 309, 68 S. E. 988; *N. & P. T. Co.* v. *Ellington's Admr.,* 108 Va. 245, 255-6, 61 S. E. 779, 17 L. R. A. (N. S.) 117.

Before considering the language of the said amendment, it may be well to inquire (1) what was the law before that amendment was made, and (2) what was the mischief and defect against which the previous law did not provide?

As before stated, the law in existence prior to the amendment of section 4106 of the Code by the act of March 16, 1910, did not confer upon a police justice jurisdiction to try any case for the violation of any ordinance of the city where it was made to appear that the right to impose the penalty involved the validity of a *bona fide* claim of title to real estate. Neither was there any original jurisdiction in any of the courts of record in the city of Richmond to

try such cases, for sections 1016-b and 4106 of the Code provided that justices of the peace and police justices should have concurrent jurisdiction with the circuit courts of the counties and the corporation or hustings courts of the cities in all cases of the violation of the revenue and election laws of the State, and of offenses arising under the provisions of chapter 187 of the Code (offenses against public policy) and under sections 3801 to 3804, inclusive (offenses against Sunday laws), and should have, except as otherwise provided, exclusive original jurisdiction for the trial of all other misdemeanors and offenses against city ordinances occurring within their respective jurisdictions. The defect in the law, as it was prior to the said amendment, was that while certain acts were made criminal offenses by statutes and by ordinances, no tribunal was vested with original jurisdiction to try persons charged with such offenses, where the right to impose the penalty involved the validity of a *bona fide* claim of title to real estate.

The only change made in section 4106 of the Code by the act of March 16, 1910, was to provide that the police justices and justices of the peace, in addition to the jurisdiction thereinbefore conferred upon them, "shall have exclusive original jurisdiction for the trial of *all offenses of whatever nature against the ordinances of their respective cities* for which they shall be appointed, except in those cities whose charter confers upon the mayor authority to try such offenses." Construing the language of the amendment in the light of the law as it was when the amendment was made and the defect against which the old law did not provide (matters of which the court must assume the legislature were fully cognizant), what was the purpose or intention of the legislature in making the amendment? It is not suggested that the legislature had, or could have had, any other object in view than remedying the defect in the

law as it existed when the amendment was made. That defect might have been corrected either by conferring upon some court of record jurisdiction to try such offenses, or by conferring that jurisdiction upon justices of the peace or police justices. The amendment makes no change in the jurisdiction of courts of record. Its only effect, therefore, if it is to be given any force whatever, was to enlarge the jurisdiction of police justices and justices of the peace. It must be presumed that the legislature, in making the amendment, which is not made by altering the verbiage of the section amended as it originally existed, but is by the addition of a new provision, intended by this added provision to make some change in the existing law. See 36 Cyc. 1165; Sutherland on Stat. Constr., sec. 332; Sedgwick on Constr., &c. 229; *Rich* v. *Keyser,* 54 Pa. St. 86, 89; *People* v. *Winstock,* 102 N. Y. Sup. 349, 351, 117 App. Div. 178.

It must be presumed, further, that in making the amendment the legislature acted with full knowledge of, and in reference to, the existing law upon the same subject and the construction placed upon it by the courts. See 36 Cyc. 1135, 1146; Sutherland on Stat. Constr., sec. 333.

Unless, therefore, in making the amendment the legislature intended to change the law as to the jurisdiction of police justices, as determined in the case of *Martin* v. *City of Richmond, supra,* the addition made to section 4106 by the amendment in question was wholly unnecessary and could accomplish nothing, for by section 1016-b of the Code, as it was at that time and when the case of *Martin* v. *City of Richmond* arose, police justices were given "exclusive original jurisdiction for the trial of all offenses against the ordinances" of their respective cities. If that provision of section 1016-b was in the mind of the legislature when section 4106 was amended, as it must be assumed it was, why was the phraseology changed and language of more

comprehensive meaning used, if it was only intended to reiterate in section 4106 the provision contained in section 1016-b as to the jurisdiction of police justices over offenses for the violation of city ordinances? In section 1016-b the language is that the police justices shall have exclusive original jurisdiction for the trial of *"all offenses against the ordinances"* of their respective cities; while the language of the amendment is that they shall have exclusive original jurisdiction for the trial of *"all offenses of whatever nature"* against the ordinances of their respective cities.

It was not held in *Martin* v. *City of Richmond* that the police justice did not have jurisdiction generally to try cases for the violation of a city ordinance in reference to streets and alleys, but only that his jurisdiction was ousted in cases of a certain nature or character, viz., where it appeared that the case was one which involved a *bona fide* claim of title to real estate. It was the nature or character of the particular case which ousted the police justice's jurisdiction, and not a lack of jurisdiction generally over offenses for the violation of city ordinances against digging, etc., or obstructing, etc., its streets or alleys.

Police justices having jurisdiction generally over all offenses for the violation of city ordinances, except those of a particular nature or character, under the decision of *Martin* v. *City of Richmond,* as the law then existed, it would seem beyond question that the legislature, in making an amendment to that law by the addition of the term "of whatever nature" after the words "all offenses," as used in section 1016-b, must have intended that no matter what was the nature or character of the violation of the city ordinance, the police justice should have jurisdiction over it. Some effect must be given to the term *"of whatever nature"* added to the language of the former law, if practicable, for the courts in interpreting the amendment must

gather the legislative intent not from a part but from all the words used, and are only justified in rejecting any part of it when it has been found impossible to give effect to all the language used and reach a rational conclusion. *Postal Tel. Co.* v. *Farmville,* 96 Va. 661, 664-5, 32 S. E. 468; *Smith* v. *Bryan, &c.* 100 Va. 199, 40 S. E. 652.

The word "whatever" is defined by Webster as "all that; no matter what; any kind soever that it may be." The language used comprehends and includes all offenses against city ordinances, no matter what they are, of every kind whatsoever, if the words are to be given their usual and accepted meaning. By holding that the legislature intended to confer upon police justices jurisdiction over the class of cases in question effect will be given to every part and to all the language of the amendment, the defect in the former law will be remedied by providing tribunals for the trial of offenses of which no court under the old law had original jurisdiction, and the conclusion avoided that the legislature, with full knowledge of the old law and the defect therein, was guilty of the unwisdom of wasting time and money in going through the various stages necessary to amend a statute without intending in any manner to change it or to remedy a known defect in the law.

But it is argued that even if the legislature did intend to confer upon police justices the jurisdiction in question, it has failed to accomplish its purpose.

It is not and could not be contended that the legislature did not possess the power to confer such jurisdiction on a police justice or justice of the peace, since by section 8, Article I, of the Constitution, it is declared, after reiterating the ancient safeguards for the protection of the life and liberty of the individual, "that the General Assembly may provide for the trial of offenses not punishable by death or confinement in the penitentiary by a justice of the peace, without a jury, preserving in all such cases the right of the

accused to an appeal to, and to a trial by jury in, the circuit or corporation court." But the contention is that a justice of the peace or police justice can only exercise such jurisdiction as is expressly conferred on him, and that the amendment to section 4106 does not expressly confer the jurisdiction in question.

It is well settled in this State, and generally it seems, that a justice of the peace (and a police justice) who is acting under a statute, can only exercise such jurisdiction as is expressly conferred on him. *Martin* v. *City of Richmond, supra,* and cases cited; 24 Cyc. 440; Am. & Eng. Enc. L. (2nd ed.) 27, 36. But the question is what is meant by the terms "expressly conferred" or "conferred in express terms"? Do they mean that in order to confer jurisdiction over a number of offenses that each offense must be described specifically, or that such description shall be made of them as will show clearly and plainly what offenses they are? In other words, if it is desired by the legislature to confer jurisdiction upon a justice of the peace or police justice over all offenses of which no other court has jurisdiction, would it be necessary to set out at length every such offense or every class of such offenses, or would it be sufficient to use general language so comprehensive and clear as to manifestly show that it was the intention of the legislature to confer jurisdiction upon justices over all such offenses no matter what was the nature or character of the offense?

If it be necessary that the jurisdiction shall be conferred by describing each particular offense, or each particular class of offenses, then neither section 4106 nor section 1016-b does this, and much of the jurisdiction now exercised by justices of the peace and police justices is in excess of their powers. If, however, the jurisdiction can be conferred by the use of general language so comprehensive and clear as to manifestly show that it was the in-

tention of the legislature to confer jurisdiction upon police justices over all offenses against city ordinances of which no other tribunal has jurisdiction, then the language of section 4106, as amended by the act of March 16, 1910, must be held sufficient to confer the jurisdiction in question.

The word "express" is defined by Webster as directly and distinctly stated; expressed, not merely implied or left to inference; as an *express* commandment; hence definite, clear, explicit, unmistakable; not dubious or ambiguous. He defines "expressly" as "in an express manner; in direct or unmistakable terms; explicitly; definitely; directly."

In Worcester the meaning of "express" is given as "in direct terms, not implied, not dubious; clear, definite, explicit, plain, manifest." The word "expressly" is defined by him to mean in direct terms, plainly.

Bouvier's Law Dictionary gives the definition of "express" as "stated or declared as opposed to implied; that which is made known and not left to implication."

It is clear, as it seems to us, that the section, 4106, of the Code, as amended by the act of March 16, 1910, in providing that police justices shall have original jurisdiction for the trial of *all offenses of whatever nature"* against the ordinances of their respective cities, "expressly" or in "express terms," within the ordinary sense or meaning of those words, confers jurisdiction upon police justices for the trial of offenses against city ordinances, although there is involved a *bona fide* claim of title to real estate, and that the chancery court erred in not so deciding.

Its judgment must, therefore, be reversed and annulled, and this court will enter such judgment, denying the writ of prohibition, as it ought to have entered.

*Reversed.*